# LOVELL STEWART HALEBIAN JACOBSON LLP

61 Broadway, Suite 501
New York, New York 10006
www.lshllp.com

Telephone
212.608.1900

Facsimile
212.719.4775

October 4, 2013

**BY ECF AND FAX:**
Honorable Naomi Reice Buchwald
United States District Judge
U.S. Courthouse
500 Pearl Street
New York, NY  10007-1312

      Re:    *In re LIBOR-Based Financial Instruments Antitrust Litigation*
               11-MD-2262 (NRB)

Dear Judge Buchwald:

      The Exchange-Based Plaintiffs ("Plaintiffs") respectfully reply to Defendants' September 24, 2013 letter from Robert F. Wise to the Court [Dkt. No. 430] ("Def. Letter") as follows:

      1. Defendants fail to respond to Plaintiffs' demonstration that the proposed amended complaint [Dkt. No. 342, Ex. A-1] was Plaintiffs' first attempt to plead a claim based on the Barclays settlement orders.  Def. Letter, *passim*.

      2. Defendants fail to cite to or attempt to distinguish *Official Publications, Inc. v. Kable News Co.*, 884 F.2d 664, 668-69 (2d Cir. 1989) and *Devaney v. Chester*, 813 F.2d 566, 569 (2d Cir. 1987) which hold that ordinarily a party is allowed to amend if their first attempt to plead a claim is unsuccessful.  Def. Letter, *passim*.

      3. Defendants fail to mention Plaintiffs' assertion that Defendants, in their opposition to Plaintiffs' motion to amend, failed to advance any argument to the effect that Plaintiffs did not plausibly allege continuous artificiality during the pre-August 2007 time period. Def. Letter, *passim*.

      4. Contrary to Defendants' desperate argument that this Court's March 29 Order expressed concerns about Plaintiffs ability to plead loss causation, all that the Court said was that "we have doubts about whether plaintiffs will ultimately be able **to demonstrate** that they sold or settled their Eurodollar contracts at a loss as a result of defendants' conduct…" [Emphasis supplied] *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11-md-2262, 2013 WL 1285338, at *42 (S.D.N.Y. Mar. 29, 2013).[1]

---

[1] The March 29 Order stated that, in amending to include Barclays-related allegations, Plaintiffs "should respond to the following concerns," all of which involved the statute of limitations. *Id.* at *32.  The Court's next reference to a motion addressing the "concerns presented here," *id.* at

5. Having failed to respond to the most important substance of Plaintiffs' arguments and authority and misapprehended the March 29 Order, Defendants argue that the motion for reconsideration filed by Plaintiffs is supposedly the sole vehicle for a motion to amend. Def. Letter, pp. 1-3. However, Defendants do not, and cannot, contend that the August 23 Order foreclosed Plaintiffs from seeking leave to amend. Indeed, FRCP Rule 15 vests the Court with discretion to grant leave to amend, which "should freely give leave when justice so requires."

Having been apprised of the reasoning in "3" above, Plaintiffs timely seek leave to move to amend to allege, consistent with the findings and reasoning in the August 23 Order, that Plaintiffs **did** suffer harm from the specific trades identified in the Barclays orders including but not limited to on the 10 days of Barclays false reports listed in Dkt. No. 397, p. 4-6 and Dkt. No. 439, p. 4. Plaintiffs believe that Plaintiffs' motion to amend will show that justice will be served by granting leave to amend consistent with "the preference expressed in the Federal Rules of Civil Procedure in general, and Rule 15 in particular, for resolving disputes on their merits." *Krupski v. Costa Crociere S.p.A.*, 130 S.Ct. 2485, 2494 (2010).

6. Defendants assert that Plaintiffs must plead (but Defendants fail to define what they mean by) "net losses" and "injury in fact". Def. Letter, p. 3. Having failed to explain their undefined term, Defendants further fail to explain how it would be practical to satisfy such term. *Id.* If, by "net loss," Defendants mean that Class members paid more artificiality than they received, then Defendants' terminology is consistent with *Strobl v. New York Mercantile Exchange*, 582 F. Supp. 770, 772-73 (S.D.N.Y. 1984), *aff'd*, 768 F.2d 22, 23-24 (2d Cir. 1985) (affirming damages to plaintiff measured as "the difference between what he received from the sale of those futures and what he would have received in a fair market").

7. Also, the Courts in *In re Amaranth Natural Gas Commodities Litig.*, 269 F.R.D. 366 (S.D.N.Y. 2010) ("*Amaranth*") and *Kohen v. PIMCO*, 244 F.R.D. 469 (N.D. Ill. 2007) ("*PIMCO*") later approved settlement plans of allocation providing for pay outs to class members based on and solely on each class member's net artificiality paid. *PIMCO*, No. 05 Civ. 4681, Stipulation of Settlement, Dkt. No. 557, ¶¶10-11 and Final Order and Judgment, Dkt. No. 572, ¶8; *Amaranth*, No. 07 Civ. 6377, Order Concerning Plan of Allocation, Dkt. No. 413, Ex. A, ¶4. There was no filter for or requirement that a class member have (or also have) net losses in the sense of more losses than profits from transactions during the class period. Profits and losses are produced by **all** factors affecting prices in the market; net artificiality paid is produced by the manipulation violation.

---

*33, was made at the conclusion of its discussion of inquiry notice and timeliness issues involving the Barclays allegations. The next admonition that a motion for leave to amend should "address the concerns raised herein," *id.* at *36, was contained in a summary paragraph *concluding* the "Statute of Limitations" section and *preceding* the "Pleading Commodities Manipulation" section of the March 29 Order. The Court's final reference to "the concerns raised herein" occurred in the conclusion paragraph of the March 29 Order, which discussed only extraterritorial application of the CEA and the statute of limitations. *Id.* at *62.

    **On the class certification motion** in *Amaranth*, 269 F.R.D. at 379, the Court reasoned: "case law suggests that because plaintiffs transacted at artificial prices, injury may be presumed." *Amaranth*, 269 F.R.D. at 379-80. The "case law" cited by *Amaranth* was *PIMCO*, 244 F.R.D. at 475-76 which held **on a class certification motion**: "Plaintiffs allege that defendants' conduct manipulated the price of the June Contract upward to an artificial level, and, thus, each purchaser of a June Contract within the class period would have paid a higher price than would otherwise be the case absent the alleged manipulation. Therefore, the Court is satisfied that all members of the class have suffered injury, and defendants' concerns over the final determination of **net damages [*i.e.*, net artificiality paid] for some** individual members of the class **should be resolved in the damages stage of the litigation**." [Emphasis supplied] *PIMCO*, 244 F.R.D. at 475-76, *aff'd*, 571 F.3d 672, 676 (7th Cir. 2009) (Posner, J.) (even the class certification motion should not put the "cart before the horse").

    Thus, in presuming injury at the class certification stage, the *Amaranth* Court relied on the *PIMCO* precedent and "transacting in an artificial market," NOT net losses in the profit-loss sense. *Amaranth*, 269 F.R.D. at 379-80.[2]

    In all the circumstances, Plaintiffs respectfully submit that this Court should hold a pre-motion conference concerning Plaintiffs' request for permission to move for leave to amend.

            Respectfully submitted,

| | |
|---|---|
| **Lovell Stewart Halebian Jacobson** | **Kirby McInerney LLP** |
| /s/ Christopher Lovell | /s/ David Kovel |

cc:  All Counsel (by electronic service)

---

[2] To be sure, in *Amaranth*, the plaintiffs had not submitted a working expert model with their class certification motion. *Amaranth*, 269 F.R.D. at 385. Accordingly plaintiffs could not show in the class motion that any plaintiff had net artificiality paid *i.e.*, paid more artificiality than they received during the class period. Therefore, plaintiffs had submitted evidence **on the class motion** showing that each plaintiff had more losses than gains from transactions during the class period. *Id.* at 379-80. But, as Plaintiffs here read *Amaranth*, it relied on the *PIMCO* precedent, not the class motion evidentiary showing by the *Amaranth* plaintiffs, as the basis for presuming injury from transacting in an artificial market.