# LOVELL STEWART HALEBIAN JACOBSON LLP

61 Broadway, Suite 501
New York, New York 10006
www.lshllp.com

Telephone
212.608.1900

Facsimile
212.719.4775

October 15, 2013

**BY ECF AND HAND DELIVERY**
Honorable Naomi Reice Buchwald
United States District Judge
U.S. Courthouse
500 Pearl Street
New York, NY 10007-1312

      Re:    *In re LIBOR-Based Financial Instruments Antitrust Litigation*
             11-MD-2262 (NRB), 11 Civ. 2613

Dear Judge Buchwald:

A.

In response to Your Honor's direction on October 8, 2013, to submit to the Court charts of U.S. Dollar LIBOR submissions for the dates listed in Dkt. No. 439, at 4, "keyed to plaintiff (at least) Atlantic Trading on those dates," the Exchange-Based Plaintiffs ("Plaintiffs") have respectfully enclosed the following three exhibits:

      1. **Exhibit "A"** is a chart summarizing Barclays' and the other BBA U.S. Dollar LIBOR Panel members' submissions on the twelve days listed on p. 4 of Dkt. No. 439.

      2. **Exhibit "B"** is a spreadsheet reflecting Plaintiff Atlantic Trading's transactions in Eurodollar futures contracts and options on Eurodollar futures contracts for each of such twelve days.

      3. **Exhibit "C"** is a spreadsheet showing whether Plaintiff Atlantic Trading was a net purchaser or net seller for each of such twelve days, and whether Barclays' manipulative report inflated or suppressed Eurodollar futures on such day.[1]

As the Court may see, Exhibit C reflects that, with respect to eight of the ten days that occurred between September 29, 2005 and August 6, 2007,[2] Plaintiff Atlantic Trading was injured by the Barclays' alleged manipulative report. Set forth below are additional explanations about each of the Exhibits.

---

[1] Based upon this Court's August 23 Order, Plaintiffs can adequately allege that Barclays' false reports on each of these twelve days had the directional impact on LIBOR indicated on Exhibits A and C. *In re LIBOR-Based Fin. Instruments Antitrust Litig.*, No. 11 MD 2262, Dkt. No. 389, 2013 WL 4504769 (S.D.N.Y. Aug. 23, 2013).

[2] At this time, Plaintiffs consider August 6, 2007 to be prior to the full suppression period. *See* Corrected Second Amended Complaint ("SAC") [Dkt. No. 438] ¶ 92, 226.

Hon. Naomi Reice Buchwald
October 15, 2013

**Exhibit A** shows that, on each of the twelve days listed on p. 4 of Dkt. No. 439, Barclays' LIBOR submission or a portion[3] thereof was moved into the lower or upper quartile range in a manner that furthered the downward or upward manipulation requested by the Barclays' trader as described in the Barclays settlement documents.

Under the reasoning of the August 23 Order, Plaintiffs may adequately allege that the Barclays settlement documents and the data points available to Plaintiffs strongly support the fact or reasonable inference that the Barclays' reports manipulated LIBOR in the direction of the false report requested by the Barclays' trader. *See also* SAC ¶¶ 186, 203-05, 207-09, 211, 213, 217, 242-44, 251); SAC ¶¶ 182-88; ¶¶ 195-96 ("between January 3, 2006 to August 6, 2007, Barclays Derivatives Traders made 111 requests relating to USD-LIBOR submissions"; "of the 111 requests made by Barclays' Derivative Traders from January 2006 through August 2007, on around 70% of those occasions, the submissions were consistent with the traders' request") (citing Barclays FSA Final Notice ¶¶ 56(i), 71)).[4]

**Exhibit B** reflects Plaintiffs' calculations of the net purchases and sales by the Plaintiff Atlantic Trading on each of the twelve dates. With respect to the options trades, Plaintiffs can adequately allege as follows. The options' exposures may be netted against the futures' exposures by converting the options exposures into futures equivalent values based on the Black's Model.[5] Doing this allows a direct comparison of, and netting between, futures trades and options trades on an "apples to apples" basis so as to address what Plaintiffs understand to be the Court's concerns in the August 23 Order.

With respect to **Exhibit C**, two of the twelve days occurred after August 6, 2007, *i.e.*, after the end of the solely trader-based manipulation. Exhibit C reflects that, on 8 of the 10 days between September 29, 2005 and August 6, 2007, Plaintiff Atlantic Trading was a net seller or net purchaser of Eurodollar futures on days when Eurodollar futures prices were allegedly artificially suppressed or inflated, respectively.

As such, Atlantic Trading was clearly injured on eight of the ten days during the initial period, *i.e.*, the period prior to the suppression commencing in August 2007. *See* SAC ¶¶ 92, 226. Therefore, it is not futile for Plaintiffs to allege that Atlantic Trading was harmed as a consequence of Barclays' trader-based manipulation prior to August 7, 2007. *See id.* ¶¶ 23, 27. In addition, in this Circuit, the issue of offsets does not impair standing if any injury exists at the time the claims are commenced. *Denny v. Deutsche Bank AG*, 443 F.3d 253, 264-65 (2d Cir. 2006).

---

[3] On certain days, there is a tie between or among Barclays' submissions and others'. In the instance of a tie, at least a portion of the Barclays' report was disregarded and moved into the upper or lower quartile range.

[4] The Barclays settlement documents expressly state that they only describe a portion of the false reports by and the evidence against Barclays, much less by and against the other Defendants. *See, e.g.*, Barclays CFTC Order at 9, 14; Barclays FSA Final Notice ¶ 56.

[5] In 1976, Black extended the well-known Black–Scholes model to value options on commodity futures. The application of the model is frequently used to value options of this type.

B.

Plaintiffs have undertaken this same analysis of these dozen days for Plaintiff 303030 Trading. On two of the selected days, 303030 Trading had net purchases or sales. As discussed in Dkt. No. 439, on April 7, 2006, 303030 Trading was a net purchaser of Eurodollar futures contracts. Plaintiffs may adequately allege that Eurodollar futures contract prices were manipulated and inflated on April 7, 2006 under the methodology of the August 23 Order. *See* Dkt. No. 439, at 3. Therefore, Plaintiff 303030 Trading was injured on this day.

In addition, on December 22, 2006, 303030 Trading sold 100 contracts of March 2008 futures, bought 188 contracts of June 2008 futures, sold 76 contracts of September 2008 futures, and sold 12 contracts of December 2008 futures. This trading strategy netted a zero overall futures position, although it created a "butterfly" position (*i.e.*, short, long and short) in the various calendar contracts. The impact of allegedly inflated Eurodollar futures prices on these purchases and sales is more complex than a simple outright net purchases or sales on a specific given day.

C.

Under this Court's October 8, 2013 direction that Plaintiffs' letters seeking leave to move to amend be treated as the papers on the motion for leave to amend, Plaintiffs respectfully conclude as follows. The showing directed by the Court and made herein further demonstrates that it is not futile for this Court to grant Plaintiffs leave to amend to allege, consistent with the August 23 Order, that they were injured by the Barclays' manipulative reports during the period January 1, 2005 through August 7, 2007. Finally, the Barclays settlement documents reveal only a small portion of Barclays' false reports. *See* fn. 4. They reveal none of the false reports by other Defendants. *Id.* Accordingly, in an amended complaint Plaintiffs respectfully submit that, each Plaintiff should be permitted to allege their transactions consistent with the Court's August 23 Order.

Respectfully submitted,

| | |
|---|---|
| /s/ Christopher Lovell | /s/ David E. Kovel |
| Christopher Lovell, Esq. | David E. Kovel, Esq. |
| LOVELL STEWART HALEBIAN | KIRBY McINERNEY LLP |
| JACOBSON LLP | 825 Third Avenue |
| 61 Broadway, Suite 501 | New York, NY 10022 |
| New York, NY 10006 | |

*Interim Co-Lead Counsel for Exchange-Based Plaintiffs*

cc: All counsel of record (by electronic filing)