# SUSMAN GODFREY L.L.P.

A REGISTERED LIMITED LIABILITY PARTNERSHIP
15TH FLOOR
560 LEXINGTON AVENUE
NEW YORK, NEW YORK 10022-6828
(212) 336-8330
FAX (212) 336-8340
WWW.SUSMANGODFREY.COM

_____

| SUITE 5100 | SUITE 5100 | SUITE 950 | SUITE 3800 |
|---|---|---|---|
| 1000 LOUISIANA STREET | 901 MAIN STREET | 1901 AVENUE OF THE STARS | 1201 THIRD AVENUE |
| HOUSTON, TEXAS 77002-5096 | DALLAS, TEXAS 75202-3775 | LOS ANGELES, CALIFORNIA 90067-6029 | SEATTLE, WASHINGTON 98101-3000 |
| (713) 651-9366 | (214) 754-1900 | (310) 789-3100 | (206) 516-3880 |

WILLIAM CHRISTOPHER CARMODY
DIRECT DIAL (212) 336-8334

E-MAIL BCarmody@susmangodfrey.com

March 16, 2015

BY HAND AND ECF

The Honorable Naomi Reice Buchwald
United States District Court for the Southern District of New York
United States Courthouse
500 Pearl Street
New York, NY 10007-1312

Re:    *In re LIBOR-Based Financial Instruments Antitrust Litigation*, No. 11-md-2262 (NRB)

Dear Judge Buchwald:

We write the Court in response to the letter submitted by Bank of America (Dkt. No. 971), in further support of the OTC plaintiffs' request to add Jennie Stuart Medical Center, Inc. ("Jennie Stuart") as a named plaintiff.[1] Bank of America opposes this request, arguing that an incorrect Bank of America entity is named, the unjust enrichment claim is untimely, and the breach of contract claim fails to state a claim. These arguments have no merit.

*First*, Bank of America argues that Jennie Stuart has no state-law claims against Bank of America Corporation ("BAC") because it directly contracted with Bank of America, N.A. ("BANA"). This is wrong. The unjust enrichment claim is properly stated against BAC, which owns BANA and operates its subsidiaries as one company, because: (a) BAC was enriched by the conspiracy to fix LIBOR; (b) the enrichment was at Jennie Stuart's expense; and (c) the benefit was obtained in such circumstances (*i.e.*, Bank of America's participation in the conspiracy to rig LIBOR) that in equity and good conscience restitution should be made. These are the elements of unjust enrichment, and all are satisfied against both BANA and its parent, BAC. *See, e.g.*, *Elbit Systems, LLC v. Credit Suisse Grp.*, 917 F. Supp. 2d 217, 230-31 (S.D.N.Y. 2013) ("The fact that [Credit Suisse Group] is a corporate level removed from [Credit Suisse

---

[1] Jennie Stuart made this request on August 20, 2014. *See* 11-md-2262 Dkt. 627. Bank of America responded on January 16, 2015. *See* 11-md-2262 Dkt. 971.

March 16, 2015
Page 2

Securities] does not defeat the plausibility of this claim against Credit Suisse Group; unjust enrichment may occur indirectly"); *Dodona I, LLC v. Goldman Sachs &. Co.*, 847 F. Supp. 2d 624, 653 (S.D.N.Y. 2012) (finding sufficiently close relationship to permit an unjust enrichment claim against defendant when plaintiff purchased security from an intermediate party one step removed from defendant); *see also LIBOR II*, 962 F. Supp. 2d 606, 629 (S.D.N.Y. 2013) (explaining that similar facts satisfied unjust enrichment elements).

Bank of America relies heavily on this Court's decision that plaintiffs' relationships with **_unaffiliated_** third-parties were too attenuated to support unjust enrichment claims. But that has nothing to do with this issue. As the corporate parent who benefited directly from the wrongdoing of its wholly owned and controlled subsidiary, BAC can be held liable for unjust enrichment, as the *Elbit* and *Dodona* courts recognized. This is a separate and distinct issue from whether one bank (say Barclays) can be held liable where the plaintiffs only have a relationship with another, wholly-separate bank (say Citibank).

Finally, BAC is liable for both the contract and unjust enrichment claims under agency principles. This is not a case where a distant corporate affiliate is being sued for unrelated transactions of an affiliate. BAC and BANA are virtually the same entity: BAC is merely a holding company for BANA, and its public disclosures make clear that the "Corporation" (which is used to refer interchangeably to BAC and to its affiliates, including BANA) "operates _**its**_ banking activities" through BANA.[2] BAC admits that it is the "Parent Company" of BAC under banking regulations, which, by definition, means that BAC "_**controls**_" BANA.[3] BANA is the "primary bank subsidiary of Bank of America Corporation"[4] and BAC's primary sources of funds are profits funneled to it by BANA.[5] BAC uses BANA to sell derivatives, including interest rate swaps like those at issue in this case, to customers: "Derivatives utilized for customers and for trading are transacted through multiple entities, including but not limited to BANA . . . ."[6] BAC and BANA also share the same management,[7] and there is no question that BAC was aware that BANA was conducting LIBOR-based transactions during the class period

---

[2] http://media.corporate-ir.net/media_files/IROL/71/71595/AR2013.pdf, at 154.

[3] http://www.federalreserve.gov/bankinforeg/resolution-plans/boa-1g-20120702.pdf, at 7; 12 C.F.R. § 360.10(b)(10) (emphasis added).

[4] http://www.federalreserve.gov/bankinforeg/resolution-plans/boa-1g-20120702.pdf, at 7.

[5] *See* Bank of America Corporation Form 10-K (fiscal year 2013) (noting that BAC's primary sources of distribution to its shareholders are "capital distributions received from its banking subsidiaries, BANA and FIA," including $8.5 billion in dividends paid to BAC from BANA in 2013).

[6] http://www.federalreserve.gov/bankinforeg/resolution-plans/boa-1g-20120702.pdf, at 21.

[7] Every principal officer for BANA is also a principal officer for BAC, with identical job titles at both entities. *See* http://www.federalreserve.gov/bankinforeg/resolution-plans/boa-1g-20140701.pdf, at 29-30.

given that BAC's management "oversees the identification of, management of and planning for . . . interest rate risk" for all the subsidiary companies.[8] Moreover, unlike the usual case where the corporate parent had nothing to do with the misconduct at issue, BAC and BANA were both knee-deep in the wrongdoing given the conglomerate's manipulation of LIBOR at the same time it was issuing LIBOR-based swaps through BANA. Allegations far less indicative of agency than this have been held to support liability in a litany of prior cases. *See, e.g., In re South African Apartheid Litig.*, 617 F. Supp. 2d 228, 273 (S.D.N.Y. 2009) (claims against GM stemming from activity of South African subsidiary sustained where complaint alleged that the subsidiary "carried out its activities on behalf of GM or that GM ratified those activities in order to profit from them"); *see also* OTC Pls.'' Opposition to RBS MTD (Dkt. 1079) at pp. 11-12 (collecting cases).

**Second**, the unjust enrichment claim is timely.[9] Bank of America does not dispute that the claim would be timely under a 5- or 6-year limitation period, but argues that the claim is untimely because New York has a 3-year statute of limitations for unjust enrichment.

This is wrong. As Bank of America appears to acknowledge, the limitations period in New York is **_6 years_** if plaintiff's unjust enrichment claim arises from the same set of facts as its contract claim and is pled in the alternative. *See Maya NY, LLC v. Hagler*, 965 N.Y.S.2d 475, 477-78 (N.Y. App. Div. 2013) (holding that a six year statute of limitations applies where contract and unjust enrichment are "based upon the same facts and pled in the alternative") (cited by Bank of America, ECF No. 971 at p. 2 n.3). That is true here: the unjust enrichment claim arises from the same set of facts as the contract claim and, while it should not matter,[10] this Court

---

[8] http://www.federalreserve.gov/bankinforeg/resolution-plans/boa-1g-20120702.pdf at 37. While these pleadings were not included in the proposed Third Amended Complaint, OTC plaintiffs would include them in the amended complaint if granted leave to file one.

[9] *See* Dkt. 971 at p. 2. The relevant transaction was entered into in October 2008. The contract and quasi-contract claims accrued each time Bank of America breached its obligations – at least through the end of the class period, in May 2010. *See, e.g., Knobel v. Shaw*, 936 N.Y.S.2d 2, 6 (N.Y. App. Div. 2011) (holding that the defendant "had a recurring obligation to pay plaintiff his 31% share of the profits generated by the properties at issue; therefore, plaintiff's contract claim accrued each time [defendant] allegedly breached this obligation" (quotations and citation omitted)).

[10] For statute of limitations purposes, it does not matter whether the unjust enrichment claim happens to be pled in the alternative. Because there is "no identified statute of limitations" for unjust enrichment, *Maya*, 965 N.Y.S.2d at 477, the default rule is that a 6-year limitation applies. *See* N.Y. C.P.L.R. 213[1] (six year limitations for "an action for which no limitation is specifically prescribed by law"); *see also Golden Pac. Bancorp v. F.D.I.C.*, 273 F.3d 509, 518 (2d Cir. 2001) ("The statute of limitations in New York for claims of unjust enrichment … is generally six years."). Some cases make an exception for claims clearly based in tort, but not for cases where the claim is based on the same facts as the contract claim. *See, e.g., Maya,* 965 N.Y.S.2d at 478 (N.Y. App. Div. 2013) ("In arguing that a three-year limitations period applies to the ninth cause of action, defendants rely on cases involving allegations for unjust enrichment

March 16, 2015
Page 4

has held that the unjust enrichment claim can be plead in the alternative to the contract claim. *LIBOR III*, 27 F.Supp.3d 447, 483 (S.D.N.Y. 2014) (noting that OTC "plaintiffs may plead breach of contract and unjust enrichment in the alternative").

Further, even if a 3-year limitations period applied under New York law, the claim would be timely under *American Pipe* because the April 2011 OTC class complaint asserted a claim for unjust enrichment against BAC and the April 2012 Consolidated Amended Complaint asserted an unjust enrichment claim against BAC and BANA.[11] *See, e.g.*, *Sapirstein-Stone-Weiss Found. v. Merkin*, 950 F. Supp. 2d 621, 625-26 (S.D.N.Y. 2013).

**Third**, Bank of America argues that Jennie Stuart fails to state a claim for breach of the implied covenant of good faith and fair dealing because Jennie Stuart was on "inquiry notice" of the LIBOR suppression when it entered the October 2, 2008 swap and, as a result, it cannot claim an implied promise of a non-manipulated LIBOR. This argument has no merit.

As a threshold matter, Bank of America conflates the inquiry notice standard with the breach of implied covenant standard. A party is on "inquiry notice" for purposes of the Commodities Exchange Act's statute of limitations "when the circumstances would suggest to an investor of ordinary intelligence the probability that she has been defrauded," and the statute of limitations period begins to run 2 years later. *See LIBOR I*, 935 F.Supp.2d 666, 698 (S.D.N.Y. 2013). For an implied covenant claim, a party must prove a breach of "any promises which a reasonable person in the position of the promisee would be justified in understanding were included in the contract." *LIBOR II*, 962 F. Supp. 2d at 632 (quotations omitted). The one does not imply the other: a party can have the reasonable expectation that its counterparty will not manipulate an index in the future even if circumstances suggest that the counterparty had defrauded others in the past.

---

stemming from tortious conduct, which is not the case here."). This court has repeatedly referred to the unjust enrichment claim as a "quasi-contract" claim and has explained that it is based on similar allegations and analyzed under similar legal standards as the contract claim. *See, e.g.*, *LIBOR II*, 962 F. Supp. 2d at 629. While the unjust enrichment claim is not "covered" by the contract, it is still a *quasi*-contract claim subject to the normal six-year statute of limitations for unjust enrichment claims. Bank of America cites a decision holding that unjust enrichment claims can be subject to a 3-year limitation if they seek money damages; that case relies on CPLR 214[3], which covers an "action to recover a chattel or damages for the taking or detaining of a chattel." This is not an action to recover a chattel. *Cf. Chevron Corp. v. Donziger*, 871 F. Supp. 2d 229, 259 (S.D.N.Y. 2012) ("'Chattel' is defined as '[m]ovable or transferable property [such as] personal property.' Money is fungible and not properly characterized as a chattel" (internal citations omitted)). Further, such a rule would be inconsistent with the black-letter law that quasi-contract claims are subject to 6-year statute of limitations.

[11] ECF No. 130. The unjust enrichment claim was also included in the Second Consolidated Amended Complaint, which plaintiffs requested to file in April 2013 and attached in May 2013. *See LIBOR* II, 962 F. Supp. 2d at 629; ECF Nos. 310, 334, 406. The claims are timely under a 3-year limitations period by virtue of any of these complaints given that the claims accrued at least through May 2010. *See, e.g.*, *Knobel*, 936 N.Y.S.2d at 6.

March 16, 2015
Page 5

On the merits, Bank of America's argument makes no sense and is contradicted by this Court's prior holdings. Bank of America's position is that, as a matter of law, Jennie Stuart could not have reasonably expected LIBOR to be set according to its definition once Jennie Stuart was on "inquiry notice" of probable wrongdoing in the past. But it makes no sense that a party would pay to <u>receive</u> LIBOR payments from Bank of America if it expected Bank of America to participate in a conspiracy to <u>suppress</u> LIBOR during the future life of the contract. This Court already rejected that outlandish contention when it permitted the implied covenant claim to go forward. *See LIBOR II*, 962 F. Supp. 2d at 632 (finding that OTC plaintiffs plausibly pled that they "expected LIBOR to be set according to its definition" and "[s]uch an expectation would have been integral to the 'bet' that is one purpose of entering into a swap"; defendants' alleged suppression "undermined the contractual bargain whereby plaintiffs agreed to pay a certain fixed rate in exchange for receiving a rate that reflected prevailing interest rates"). The inquiry notice findings do not undermine the conclusion that OTC plaintiffs' reasonable expectations were plausibly breached – indeed, this Court reached both conclusions in the same orders.

For these reasons and those stated in OTC plaintiffs' previous letter, Jennie Stuart should be added as a named plaintiff and Bank of America should remain in the action.

Respectfully submitted,

William Christopher Carmody
SUSMAN GODFREY LLP

Michael D. Hausfeld
HAUSFELD LLP

CC: All Counsel (By ECF)